PACKARD MOTOR CAR COMPANY OF CHICAGO, Respondent, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*November 11—December 5, 1922.*

*Eminent domain: Street railways: Double tracking: Street partially in city and partially in town.*

Where one half of a street which is used almost exclusively for city travel is located within the limits of a city and the other half within the limits of a town and a single-track railway is operated on the portion within the city, such street is not a rural highway, and the construction of a double-track street railway does not impose an additional burden or constitute an illegal taking of property. *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, distinguished. VINJE, C. J., and CROWNHART, J., dissent.

APPEAL from an order of the circuit court for Milwaukee county: W. B. QUINLAN, Judge. *Reversed.*

The appeal is from an order sustaining the plaintiff's demurrer to the defendant's answer.

The plaintiff is an automobile dealer and the owner of a certain piece of real estate situated on the southwest corner of Thirty-fifth street and Grand avenue in the city of Milwaukee, said real estate having a frontage on said Thirty-fifth street of 200 feet, and having situated thereon a valuable building, occupied by the plaintiff and used by it as a garage, repair shop, and sales office.

In its complaint plaintiff prays for an injunction restraining the defendant from laying a street-car track along said Thirty-fifth street on the west side thereof, for the reason that such west side of Thirty-fifth street in front of the premises of the plaintiff is located in the town of Wauwatosa, and because such appropriation on the part of the defendant of such part of said Thirty-fifth street amounts to an unlawful taking of its property, no condemnation proceedings having been begun or prosecuted to secure the right to use such street for street railway traffic.

In addition to the facts above stated the defendant alleges that Thirty-fifth street is a public street or highway, extending from Burleigh street at the northern limits of said city to Park Hill avenue, the southern end of its line. The following facts in substance are taken from the statement of facts in defendant's brief, and concisely present the material facts and circumstances relied upon as a defense:

The defendant operates a double-track line of electric railway (except for the stretch of single track hereinafter mentioned) upon Thirty-fifth street, extending southerly from Burleigh street to Park Hill avenue. At Burleigh street the west limits of the city of Milwaukee are more than half a mile west of Thirty-fifth street. From Burleigh street towards the south the defendant's line consists of a double-track system for a distance of over two and a fourth miles to a point where Thirty-fifth street is intersected by Wells street, which is one block north of the plaintiff's

premises. At about State street, three blocks north of Grand avenue, the west limits of the city recede to the center of Thirty-fifth and State streets. The boundary line of the city then continues southerly along the center line of Thirty-fifth street across Grand avenue to St. Paul avenue, where the line again proceeds to the west, returning to the center line of Thirty-fifth street at what is known as Park Hill avenue, which is at the edge of a huge bluff, descending towards the south into the so-called Menominee Valley. At both the northern and southern termini of the line Thirty-fifth street lies wholly within the city of Milwaukee, and at such points the defendant's line consists of a double-track system. Between St. Paul avenue and Wells street there is only a single track, which lies east of the center line of Thirty-fifth street and within the city of Milwaukee. From State street to St. Paul avenue that portion of Thirty-fifth street lying west of the center thereof is located in the town of Wauwatosa. The grade of the west half of Thirty-fifth street abutting plaintiff's premises corresponds with the established grade of the east half thereof. The sidewalk adjoining plaintiff's premises is of concrete, and is also constructed so as to conform to the established grade on the east side of Thirty-fifth street.

The substitution of a double-track line for that portion of the line which consists of the single track was attempted by the defendant pursuant to the order of the railroad commission. All of Thirty-fifth street lies within the single-fare area of the city of Milwaukee as established by the railroad commission, and that portion of Thirty-fifth street lying in the town of Wauwatosa is approximately two miles east of the west boundary of the single-fare area. At the southerly terminus of this line are located the repair shops of the Chicago, Milwaukee & St. Paul Railway Company, and the territory west of the single-track system for a considerable distance is extensively occupied and settled by an urban population corresponding with that which exists on

the east side of such street, and there are located upon such territory numerous buildings used both for residential and business purposes. That the Thirty-fifth street line is used almost exclusively by residents of the city of Milwaukee and residents constituting the urban population immediately west of the boundary line of said street in traveling to and from their homes to said repair shops of said Chicago, Milwaukee & St. Paul Railway Company and to and from other industrial plants, business houses, and residences in the city of Milwaukee. That such street is used strictly for urban traffic, and that the proposed use by the defendant will be strictly for such purpose and for the relief of traffic congestion.

The answer also alleges that such proposed use of said street will not damage the plaintiff or obstruct plaintiff's use of the street excepting to the extent required for the passage of the defendant's cars, which will be operated upon tracks so laid that a roadway 12.3 feet in width will exist from the most westerly rail to the west curb of Thirty-fifth street.

The cause was submitted for the appellant on the brief of *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and for the respondent on that of *Lines, Spooner & Quarles* of Milwaukee.

DOERFLER, J. The sole issue raised by the demurrer involves the question whether the laying of a double-track system on Thirty-fifth street in front of plaintiff's premises constitutes an unlawful taking of plaintiff's property.

Plaintiff in its brief relies solely upon the decision in the case of *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, 74 N. W. 538, and it contends that in such case this court has established and laid down a definite rule applicable to the instant case, under and pursuant to which the use of a highway located beyond the limits of a city and in a town becomes illegal unless such right is first established under

condemnation proceedings pursuant to the statutes in such case made and provided, and that such use of such highway constitutes an extra burden thereon, for which the abutting property owner is entitled to compensation.

In the *Zehren Case* the defendant attempted to lay tracks upon Oakland avenue, a highway running north and south in the city of Milwaukee, and extending northward beyond the city limits through the town of Milwaukee and terminating in the village of White Fish Bay, an incorporated village whose southern boundary was about one and a half miles north of the northern boundary line of the city of Milwaukee. The plaintiff owned several lots on the east side of the highway about one quarter of a mile north of the city limits. The issue presented in the case was whether or not the laying of the tracks upon this highway constituted a taking of property for which plaintiff was entitled to compensation. In the decision of the court by the late Mr. Chief Justice WINSLOW it is said:

"The question is a new one in this court, and one the importance of which, in view of the rapid development of electric power as a means of carriage for long distances, can hardly be overestimated. If the highway in question in this case can be so used, the question at once arises whether every country highway may not be used in the same way. If it be said that the highway before us in this case is in effect a city street because of its close proximity to the city, and because the adjoining lands are platted, and because it connects a suburban village with the city, and that a clear distinction ought to be drawn between such a highway and the ordinary country road in farming districts, the inquiry will then be, Can such a distinction be practically drawn, and can it be satisfactorily applied, and upon what solid grounds will it rest? A distinction so important must in reason be one which can be drawn with some reasonable degree of certainty in every case and must be capable of practical application. . . . Our conclusion is that an interurban electric railway, running upon the highways through country towns, is an additional burden upon the highway.

. . . But it is said that a distinction should be drawn between a highway in close proximity to a city, or running between the city and a neighboring suburb, and the ordinary country road through a farming district. The suggestion is not without weight. There is much difference between the practical uses to which the two highways are generally put. The suburban highway very frequently approximates closely to the city street. But, as indicated at the outset of this opinion, the difficulty in drawing any clear line of demarcation between the two is very great. If a line be drawn in one case upon the facts in that case, depending upon mere proximity, or upon the manner of use, or the density of population, or the prospect of rapid settlement, or upon all of these circumstances together, it cannot apply to any other case; and the question will always be one of doubt and embarrassment, leading to different conclusions in different courts. Such a condition of the law is to the last degree undesirable. . . . If the line be fixed at the limits of the corporation, it will at least have the great merit of certainty, and be capable of unerring application. Presumably the city limits include the entire urban area, and we feel, under all the circumstances, that it is the true and proper line."

The language used in the *Zehren Case* is clear and unambiguous. The facts in the case, while materially different from those in the instant case, constitute a proper basis for the decision of the court, and such decision has remained unchallenged for a period of upwards of twenty years and must now be considered as *stare decisis*. The rule thus laid down in the *Zehren Case* is a salutary one and has practically eliminated litigation in this state upon the same or similar issues.

In the *Zehren Case* the road in question extended through the town of Milwaukee from the northern limits of the city to the southern limits of the village of White Fish Bay. It was contended by the defendant in that case that the property in the vicinity of plaintiff's real estate was platted and extensively occupied by residences and was urban in character like city property. The court plainly manifested the

difficulties involved in the situation in that case and referred to the fact that the authorities outside of Wisconsin were hopelessly divided on the subject. The decision, however, ·was finally rested upon the inability and difficulty in drawing a clear line of demarcation, and because a line drawn in one case, upon the facts in that case, cannot apply to any other case, and because the question will always be one of doubt and embarrassment, leading to different conclusions in different courts. Note the language of the court: "Such a condition of the law is to the last degree undesirable." A careful study of the *Zehren Case* is convincing beyond controversy that the decision was rested almost solely upon the impracticability of drawing a definite line which would act as a guide for the decision of other cases. It is also fairly to be seen from the decision that had such lack of practicability not existed in the minds of the court, the court would have pronounced in favor of the road, making the basis of the right to lay a street-railway track system an urban population. We are equally clear that had the situation in the instant case constituted the facts in the *Zehren Case* the court would have sustained the contention of the defendant in such case.

Continuing in its decision in the *Zehren Case* the court uses this language:

"That there are many and marked differences between the uses to which a city street is put and the uses to which a country highway is put cannot be denied; nor can it be denied that the uses contemplated when the land is taken vary widely, except that both are intended for purposes of travel. The street railway in its inception is a purely urban institution. It is· intended to facilitate travel in and about the city, from one part of the municipality· to another, and thus relieve the sidewalks of foot passengers and the roadway of vehicles. It is thus an ·aid to the exercise of the easement of passage; strictly, a city convenience, for use in the city, by people living or stopping therein, and fully under the control of municipal authorities who have been endowed with ample power for that purpose."

Referring to the use of the highway in front of the plaintiff's premises the court continues:

"It is very difficult to say that this use of a country highway is not an additional burden. It is built and operated mainly to obtain the through travel from city to city, and only incidentally to take up a passenger in the country town. This through travel is unquestionably composed of people who otherwise would travel on the ordinary steam railroad, and would not use the highway at all. Thus, the operation of this newly-developed street railway upon the country road is precisely opposite to the operation of the urban railway upon the city street. It burdens the road with travel which would otherwise not be there, instead of relieving it by the substitution of one vehicle for many."

In the *Zehren Case* the extension of Oakland avenue through the town of Milwaukee constitutes such highway in such town purely a rural road. The street railway, if constructed thereon, would only be incidentally used by the residents in the town, and its main use would be confined to travelers passing from the city to the village, and *vice versa.* Such street railway operated upon such rural road would have a tendency to divert traffic onto said road and would act as a competitor to the steam railroad, and for that and other reasons the court decided that the construction and operation of a street railway thereon would constitute an additional burden and an illegal taking of private property.

In the *Zehren Case* the court had in mind either an extension of the street railroad as was contemplated in that case, through rural territory connecting the city with the village, or a street railroad merely extended beyond the limits of the city, or one operated on a street in a town proximating the boundary line of the city. It did not have in mind a situation such as is presented in the instant case. Thirty-fifth street between St. Paul avenue and State street is not a rural road. It does not extend through a rural population. It does not connect one city with another, or

a city with a village. It is admittedly an urban street. It connects two densely populated and built-up portions of the city of Milwaukee, and along the portion of the street in question is, at least to the extent of fifty per cent. of its width, located within the boundary lines of the city of Milwaukee. The land north of State street is composed of territory within the city boundary, and, in fact, the city territory extends in a zigzag line towards the northwest until it reaches Burleigh street, the northern limits of the city and the northern terminus of the line. The territory to the south and southwest of St. Paul avenue, where it intersects Thirty-fifth street, is within the city limits. So that, to the north of State street and to the south of St. Paul avenue you have the city proper, and the entire east half of this portion of Thirty-fifth street is within the city. This portion of the street-car line is used almost exclusively for the purpose of city travel.

Can the portion of Thirty-fifth street, therefore, involved herein be considered a rural street in a rural community such as was contemplated in the *Zehren Case?* Being bounded on three sides by the city, and one half thereof along its entire length being situated within the city limits, and the street itself being almost exclusively used for the purposes of city travel, and the proposed double-track system being designed solely for the purpose of accommodating in a large degree such travel, and there being no substantial extra burden placed upon the street by reason of the construction of the double-track system, and the territory in the town immediately west of Thirty-fifth street being populated and built up like that immediately east of Thirty-fifth street, can such portion of Thirty-fifth street involved herein be deemed a rural highway? The fact that one half of the street in question is located within the town and one half within the city does not constitute this street as two highways, but as one single highway, and by reason

of the persuasive facts herein detailed such street becomes not only an urban highway, but for the purpose of construing the issues involved herein a city highway.

Such conclusion eliminates effectually the difficulty which confronted the court in the *Zehren Case* with respect to the line of demarcation, such difficulty being the basis for the adoption of the rule laid down in that case.

The conclusions herein arrived at leave the rule adopted in the *Zehren Case* in full force, virtue, and effect within the various situations detailed in the decision and contemplated by the court in that case. Such conclusions also clearly harmonize with the spirit and the philosophy of the *Zehren Case,* and, instead of emasculating the force of the rule, more firmly establish and confirm it. Extensions of the street railway systems propelled by electric power, hinted at by the learned Chief Justice in his opinion in the *Zehren Case,* have in the meantime become actual reality. Such railway systems now afford means of transportation for both passenger and freight traffic connecting cities and villages in a large portion of the state, and the situation as it exists in Wisconsin finds its parallel in almost every state in the Union. The electric street railroad has become a powerful competitor of the steam railroad, and it was this prospective development which was realized by the court and so clearly outlined in the opinion that entered into, in a large degree, the reasoning processes underlying the opinion in the *Zehren Case.*

Reference is solely made to the one-fare limit in the instant case, which extends a distance of upwards of two miles west of Thirty-fifth street, for the purpose of indicating the urban population which the street railway serves.

The only language in the *Zehren Case* which might be construed to make that case applicable to the instant case is that which refers to a rural street in a town which proximates the boundary line of the city. There is no street of that nature involved in this case.

Another insurmountable difficulty confronts the plaintiff in this case. It has elected to come into a court of equity, and to obtain equitable relief it must appear that it will suffer damage. The double-track system in front of its premises will merely serve as a means of accommodating the traffic. It will not result in additional traffic upon the street. The alleged difficulties referred to in its complaint with respect to the passage of vehicles to and from its plant are more imaginary than real. It will suffer no substantial damage, and for that reason alone a court of equity cannot be called upon to exercise its power in plaintiff's behalf.

We therefore hold that the order of the lower court sustaining the demurrer to the answer must be reversed.

*By the Court.*—The order of the circuit court sustaining the demurrer to the answer is reversed, and the cause is remanded with directions to enter an order overruling plaintiff's demurrer, with costs, and for further proceedings according to law.

VINJE, C. J. (*dissenting*). In so far as the opinion of the court asserts that the rule declared in the *Zehren Case,* establishing the city limits as the line of demarcation beyond which street-car rights of way create an additional burden upon the land, is in no way limited or modified by this decision, I cannot concur in it. After careful consideration and full discussion in the *Zehren Case* it was held that the city limits furnished the best and most practical boundary, and it was held that it should constitute the boundary in all cases. Now we say that it shall not constitute the boundary in this case or in analogous cases. That is clearly a modification of the rule announced in the *Zehren Case.*

I also doubt very much the wisdom of modifying the rule in the *Zehren Case,* and of opening up the question as to what constitutes the correct boundary in each case. The difficulties foreseen in the *Zehren Case* will be sure to confront us in the future, and it is by no means certain that

justice will be better administered under the modified rule now adopted.

I am authorized to state that Mr. Justice Crownhart concurs in this dissent.